KEITH H. RUTMAN (CSB #144175)
Attorney at Law
402 West Broadway, Suite 2010
San Diego, California 92101-8516
Telephone: (619) 237-9072
Facsimile: (760) 454-4372
email: krutman@krutmanlaw.com

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL T. BRUMFIELD, M.D., and DAINA RYCKMAN,<br><br>           Plaintiffs,<br><br>v.<br><br>SDPD OFFICER MUNOZ,<br>SDPD OFFICER DAWSON,<br>SDPD OFFICER PIERCE,<br>SDPD OFFICER BOLLIG,<br>AMERICO A. ALBALA, M.D.,<br>MICHAEL E. MCMANUS, M.D.,<br>and DOES 1-20 inclusive,<br><br>           Defendants. | Case No. 08-CV-958-WQH (NLS)<br><br>PLAINTIFFS' RESPONSE AND OPPOSITION TO DEFENDANTS' MOTION TO DISMISS<br><br><br>DATE: 8/25/08 @ 11:00<br>COURTROOM: 4<br>NO ORAL ARGUMENT UNLESS REQUESTED BY COURT |

Plaintiffs DANIEL T. BRUMFIELD, M.D. and DAINA RYCKMAN, by and through their attorney of record, hereby file their Response and Opposition to Defendant ALBALA and McMANUS' Motion to Dismiss the Complaint under F.R.C.P. 12(b)(6).[1]

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1.    THE PERTINENT ALLEGATIONS OF THE COMPLAINT**

> 23.    At Aurora, he was initially placed in the care of Defendant McMANUS, who failed to properly investigate the facts which led to his commitment. Specifically, it was reported that Dr. BRUMFIELD had (1) barricaded Mrs. BRUMFIELD in the house; (2) discharged 3 cherry bombs inside the home; and (3) discharged a firearm in the house.  None of these things happened. None of these facts are in the police reports, but they do appear in the medical records, suggesting the police orally stated these things to medical personnel,

---

[1] Plaintiff DANIEL T. BRUMFIELD, M.D. is the only party bringing a claim(s) against Defendants ALBALA and McMANUS.

but were unwilling to commit them to writing. Moreover, Mrs. BRUMFIELD and other family members advised medical personnel that theses facts were incorrect, but their explanations and statements were ignored.

24. Notwithstanding the fact that the admitting diagnosis ruled out (at least as far as Axis I is concerned) delusional disorder, dementia with delusions, and major depressive disorder with psychosis, on May 31, 2008, after the initial 72 hour hold had expired, Defendant McMANUS authorized Dr. BRUMFIELD to be held for an additional 14 days. He certified to the Superior Court that Dr. BRUMFIELD was a danger to others; deemed him gravely disabled as defined by Welfare & Institutions Code § 5008, and stated the "specific facts which form the basis for our opinion" are "paranoid, delusional marginally demential, discharged firearms at home, threatening and agitated." These are not facts but rather unjustified conclusions lacking in either factual or legal support.

25. At Aurora, Dr. BRUMFIELD received no treatment for either chemical exposure or a torn rotator cuff.

26. Once Defendant McMANUS improperly certified that Dr. BRUMFIELD was suitable for a 14 day hold, he was delivered to the care of Defendant ALBALA.

27. Defendant ALBALA continued to detain Dr. BRUMFIELD until June 7, 2008, prior to the expiration of the 14 day hold him when it became apparent he had been misdiagnosed and was not a danger to himself or others or that he was delusional or suffering from any other mental illness. Notwithstanding the lack of evidence, Defendant ALBALA concluded in his discharge diagnosis that Dr. BRUMFIELD was suffering from (on Axis I) "Dementia with Delusions Features of Unknown Etiology." Had Defendant ALBALA properly investigated the underlying facts and properly examined, treated and diagnosed Dr. BRUMFIELD, he would have released Dr. BRUMFIELD immediately.

28. As part of his discharge plan, Defendant ALBALA prescribed a number of medications, including Resperdol (an anti-psychotic medication), which Dr. BRUMFIELD could not safely take due to the fact that he had previously suffered a heart attack. This particular medication caused a number of side effects, including a persistent rash. Upon cessation of the Resperdol, the side effects, including the rash, disappeared. Defendant ALBALA did not properly disclose the risks associated with any of these medications to Dr. BRUMFIELD's wife, whom Defendant ALBALA relied upon to administer the medications.

**2.    INTRODUCTION**

A Rule 12(b)(6) motion is similar to the common law general demurrer: i.e., it tests the legal sufficiency of the claim or claims stated in the complaint. The court must decide whether the facts alleged, if true, would entitle plaintiff to some form of legal remedy. Unless the answer is unequivocally "no," the motion must be denied. Conley v. Gibson 355 U.S. 41, 45-46 (1957).

Thus, a Rule 12(b)(6) dismissal is proper only where there is either a "lack of a

cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Graehling v. Village of Lombard, Ill. 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. Cahill v. Liberty Mut. Ins. Co. 80 F.3d 336, 337-338 (9th Cir. 1996).

"Claim" means a set of facts which, if established, gives rise to one or more enforceable legal rights. Goldstein v. North Jersey Trust Co. 39 F.R.D. 363, 366 (SD NY 1966). In a complaint alleging several distinct claims for relief, a Rule 12(b)(6) motion may be directed to less than all of the claims raised.

A matter that is properly the subject of judicial notice (FRE Rule 201) may be considered along with the complaint when deciding a motion to dismiss for failure to state a claim. MGIC Indem. Corp. v. Weisman 803 F.2d 500, 504 (9th Cir. 1986)(court may take judicial notice of official records and reports without converting Rule 12(b)(6) motion into Rule 56 motion for summary judgment); Henson v. CSC Credit Servs. 29 F.3d 280, 284 (7th Cir. 1994).

**3. IMMUNITY UNDER WELFARE & INSTITUTIONS CODE SECTIONS 5154 AND/OR 5278 ONLY APPLY IF THERE IS PROBABLE CAUSE FOR THE SEIZURE, AS THE IMMUNITY IS QUALIFIED, NOT ABSOLUTE. IN THIS CASE, THE FACTS SUPPORTING SUCH A PROBABLE CAUSE FINDING WERE EITHER WILFULLY OR RECKLESSLY FALSE**

**Introduction**

Welfare & Institutions Code § 5154 provides in part that:

(b) The professional person in charge of the facility providing 72-hour treatment and evaluation, his or her designee, the medical director of the facility or his or her designee described in Section 5152, the psychiatrist directly responsible for the person's treatment, or the psychologist shall not be held civilly or criminally liable for any action by a person released at the end of the 72 hours pursuant to this article.

Welfare & Institutions Code § 5278 provides in part that:

Individuals authorized under this part to detain a person for 72-hour treatment and evaluation pursuant to Article 1 (commencing with Section 5150) or Article 2 (commencing with Section 5200), or to certify a person for intensive treatment pursuant to Article 4 (commencing with Section 5250) or Article 4.5

(commencing with Section 5260) or Article 4.7 (commencing with Section 5270.10) or to file a petition for post-certification treatment for a person pursuant to Article 6 (commencing with Section 5300) shall not be held either criminally or civilly liable for exercising this authority <u>in accordance with the law.</u>  (Emphasis added)

These statutory immunities apply not just to false imprisonment claims, but to malpractice allegations as well so long as they stem from the decision to initiate the detention.  However, the statutes do not immunize a health care provider from liability for breaches of the applicable standard of care during the period of confinement.  <u>Gonzalez v. Paradise Valley Hospital</u>, 111 Cal.App.4th 735, 741 (2003).  As such, to the extent the claim against Dr. ALBALA stems from his decisions to prescribe certain medications (Complaint ¶ 28), then the motion must be denied.

**A Legal Sufficient Probable Cause Determination is Required as a Prerequisite to Civil Immunity**

In <u>Bias v. Moynihan</u>, 508 F.3d 1212 (9th Cir. 2007), the Court stated:

Under section 5150, an officer may detain any person the officer determines, "as a result of mental disorder, is a danger to others, or to himself or herself, or gravely disabled." Cal. Welf. & Inst. Code § 5150. If such a determination is made, the officer may place the person at a county-designated facility for a "72-hour treatment and evaluation." Id. The officer's determination must be based on probable cause. Id. Probable cause exists under section 5150 if facts are known to the officer "that would lead a person of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person detained is mentally disordered and is a danger to himself or herself." (Citation) To justify the detention, the officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant his or her belief or suspicion." Id. at 541. "Each case must be decided on the facts and circumstances presented to the officer at the time of the detention and the officer is justified in taking into account the past conduct, character, and reputation of the detainee." Id. (citation omitted).

<u>Bias v. Moynihan</u>, <u>supra</u> at 1220; See also <u>Heater v. Southwood Psychiatric Center</u>, 42 Cal.App.4th 1068, 1080 (1996):

In <u>Heater v. Southwood Psychiatric Center</u>, Southwood argued that the immunity under § 5278 was absolute, such as is the case in connection with the immunity for reporting suspected child abuse set out in Penal Code § 11172 (a).  Accordingly, according to Southwood, no probable cause hearing was required.  The Court disagreed:

. . . We begin with the fundamental rule that our primary task in construing a statute is to determine the Legislature's intent.  We must begin with the words

of the statute. ... The statutory language, of course, is the best indicator of legislative intent. (Citations omitted)

The entire preceding discussion of Heater's claims was in fact necessitated by the statute's directive requiring his detention be "in accordance with the law. " The language which Southwood asks us to disregard, "the best indicator of legislative intent," can only mean what it plainly says: that while intrusions on personal freedom may be necessary in certain circumstances, those circumstances must be both defined and limited, as was required in this case.

Additionally, as this court has noted in the past, "[t]he LPS Act must be construed to promote the intent of the Legislature, among other things, to end the inappropriate, indefinite and involuntary commitment of mentally disordered persons, to provide prompt evaluation and treatment and to protect mentally disordered persons (§ 5001)." (Michael E.L. v. County of San Diego, 183 Cal.App.3d 515, 525 (1986)

Clearly, an absolute immunity would not tend to "end the inappropriate commitment of mentally disordered persons," but would tend instead to promote such by relieving commiters from the necessity of compliance with statutory directives. Also, the proposed absolute immunity would derogate from, rather than advance, "prompt evaluation and treatment." Thus, it is beyond doubt that Southwood's proposed reading of the statutory immunity would not protect, but would instead expose to the possibility of abuse, the mentally disordered.

Further, the rationale behind the distinction in the two immunity statutes is obvious: while an incorrect report may carry collateral consequences of upset or anger after an investigation triggered by the report determines that it was incorrect, a false imprisonment not in accordance with the law is a far more serious and immediate consequence for the person concerned.

Under Southwood's interpretation, a health care provider authorized to commit persons to 72-hour detentions could use such power to, for example, punish an errant child, a spouse, or a quarrelsome neighbor, with no consequent liability for such abuse of power. While it is true "[c]ourts may, of course, disregard even plain language which leads to absurd results or contravenes clear evidence of a contrary legislative intent" (citation), neither situation obtains here. "The statute, in short, may be read to mean precisely what it says. " (Ibid.) We reject the contrary assertion.

Heater v. Southwood Psychiatric Center, supra, at 1084-1085, see also Bias v. Moynihan, supra 508 F.3d at 1221-22 (agreeing that immunity lies if probable cause exists).

Here, any probable cause determination conducted pursuant to Welfare & Institutions Code § 5254-5256[2] was tainted because, the facts and circumstances identified by

---

[2] Although the Complaint does not allege it, such a hearing was conducted on June 1. 2007. The Court may take judicial notice of these official records. MGIC Indem. Corp. v. Weisman 803 F.2d 500, 504 (9th Cir. 1986) see Exhibits

Defendants ALBALA and McMANUS (or their subordinates) were either "wilfully or recklessly" false within the meaning and import of Franks v. Delaware, 438 U.S. 154 (1978).

In Franks, the Supreme Court expressly addressed the situation in which an affidavit purportedly justifying a finding of probable cause (in that case, in support of an application for a search warrant) recklessly and deliberately misstated the facts known by the affiant. The Court stated:

> [W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement, is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, <u>the search warrant must be voided and the fruits of search excluded to the same extent as if probable cause was lacking on the face of the affidavit</u>.

Franks v. Delaware, supra, at p. 156 (emphasis supplied).

The Court held that such statements must be excised from an affidavit and the probable cause calculus redetermined. Id. at 171-72.

In United States v. Lefkowitz, 618 F.2d 1313, 1317 fn. 3 (9th Cir. 1980), the Ninth Circuit assumed, without deciding, that the Franks rationale also permits an attack on search warrants obtained by affidavits marred by omissions of facts required to prevent technically true statements in the affidavit from being misleading.

Franks' progeny apply the rule to recklessly false statements in addition to intentional falsehoods. United States v. Flores, 679 F.2d 173, 176 n.1 (9th Cir. 1982).

Omissions also qualify:

> By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all meaning.

United States v. Stanert, 762 F.2d 775, 781 (9th Cir. 1985).

1-2.

The Ninth Circuit has held that "clear proof" of a deliberate or reckless omission is not required, Stanert, supra, 762 F.2d at 781, because such proof is reserved for the evidentiary hearing. All that is required is that the defendant make a substantial showing that the affiant intentionally or recklessly made misstatements or omitted facts to either make false statements or make technically true statements in the affidavit misleading. The effect of all misrepresentations and omissions must be assessed in a cumulative fashion when determining whether probable cause exists without the misrepresentations. Id. at 782.

In this case, any prior probable cause finding (to the extent relevant or somehow determinative of the issues in this case) was tainted because the decision maker was presented with false information.  At this time, it is unknown if the information provided (by either Defendants McMANUS, ALBALA or people who acted under their supervision) know the information were "deliberate or reckless."

**4.     CONCLUSION**

To the extent that the Complaint needs to be amended to allege that Defendants ALBALA or McMANUS "deliberately or recklessly" presented false information to the hearing officer and/or a claim for false imprisonment, then leave to amend should be granted.  See F.R.C.P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962)(Federal policy strongly favors determination of cases on their merits.  Therefore, the role of pleadings is limited, and leave to amend the pleadings is freely given unless the opposing party makes a showing of prejudice); Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990)(This policy is to be applied with "extraordinary liberality.")

1 | Otherwise, the motion to dismiss should be denied.

                                           Respectfully Submitted,

Dated: August 11, 2008                     s/ Keith H. Rutman
                                           KEITH H. RUTMAN
                                           Attorney for Plaintiffs
                                           Email:  krutman@krutmanlaw.com

**CERTIFICATE OF SERVICE**

I certify that on August 11, 2008 I electronically filed the foregoing document with the clerk of court for the U.S. District Court, Southern District of California, using the electronic case filing (ECF) system of the Court, and thereby served it on all counsel of record in this case.

Dated: August 11, 2008                     s/ Keith H. Rutman
                                           KEITH H. RUTMAN
                                           Attorney for Plaintiff
                                           Email:  krutman@krutmanlaw.com

State of California - Health and Human Services Agency                                             Department of Mental Health

**NOTICE OF CERTIFICATION**
MH 1760 (Rev. 08/04)

Confidential Patient Information   HIPAA Privacy Rule
See Welfare & Institutions Code    45 C.F.R. § 164.508
Section 5328 and Penal Code 11142

The authorized agency providing evaluation services in the County of __San Diego__ has evaluated the condition of:

Name __Brumfield, Daniel__

Address __5175 Del Mar Mesa, San Diego, CA 92130__

Marital Status __Married__   Date of Birth __2/6/1930__   Sex __Male__

We, the undersigned, allege that the above-named person is, as a result of a mental disorder or impairment by chronic alcoholism (Mark all that apply):

☒ A danger to others   ☐ A danger to himself or herself   ☒ Gravely disabled as defined in paragraph (1) of subdivision (h) or subdivision (1) of Section 5008 of the Welfare and Institutions Code

Strike out all inapplicable classifications.

The specific facts which form the basis for our opinion that the above-named person meets one or more of the classifications indicated above are as follows: __Paranoid, delusional, markedly demented. Discharged firearms at home, threatening and agitated__

The above-named person has been informed of this evaluation, and has been advised of the need for, but has not been able or willing to accept treatment on a voluntary basis, or to accept referral to, the following services: __No insight into problems, refuses treatment__

We, therefore, certify the above-named person to receive intensive treatment related to the mental disorder or impairment by chronic alcoholism beginning this __31st__ day of __May__, 20__07__, in the intensive treatment facility herein named __Aurora__

Date __5/31/07__

Signature __Dr. McManus__

Signature __P. McGowan__

I hereby state that I delivered a copy of this notice this day to the above-named person and that I informed him or her that unless judicial review is requested, a certification review hearing will be held within four days of the date on which the person is certified for a period of intensive treatment and that an attorney or advocate will visit him or her to provide assistance in preparing for the hearing or to answer questions regarding his or her commitment or to provide other assistance. The court has been notified of this certification on this day.

Signature __P. McGowan RN__   __5/31/07__

Copies: Person Certified-Personally delivered

# SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN DIEGO
FAMILY COURT BUILDING, 1555 6TH AVENUE, SAN DIEGO, CA 92101

THE MATTER OF THE CERTIFICATION REVIEW HEARING REGARDING:

Denise Brumfield, PATIENT

**CERTIFICATION REVIEW HEARING FINDINGS AND ORDER**
(Pursuant to W&I Code Section 5256)

FOR COURT USE ONLY

D.O.B. 2-6-1950

Hearing Held At: Aurora Behavioral Health   On: 1 June 07
Hearing Officer: Dennis Ware   Patient Advocate: Khadija Moss
Facility Representative(s): Peggy Mc Govern RN
Maisie Brister LCSW

Others Present: _____

The patient ☒ was, ☐ was not, present at the hearing, and was certified on (Date) 30 May 07 as:

☒ (1) a danger to others;  ☐ (2) a danger to himself/herself;  ☒ (3) gravely disabled.

**FINDINGS:** Evidence having been presented, there is probable cause to believe the person certified:

☐ **DOES NOT** have a mental disorder.

☒ **DOES** have a mental disorder, and as a result of a mental disorder:

   Is  Is not
   ☒  ☐  a danger to others.
   ☐  ☐  a danger to self.
   ☒  ☐  gravely disabled.

The evidence relied upon and the reasons for the decision are as follows: _Re setting of fires_
_at mens abus. Discharging firearms. Threats to son/&_
_Outlying shelter._

Good cause appearing and based on the above findings, **IT IS ORDERED** that:

☒ 1. The patient **MAY BE DETAINED** for involuntary care, protection and treatment related to the mental disorder for the remaining number of days under the 14 day certification.

☐ 2. The patient **MAY NO LONGER BE DETAINED**. This order does not prohibit the patient from remaining at the facility on a voluntary basis, and the facility may provide referral information concerning mental health services.

Date: 1 June 07   Hearing Officer: Dennis Ware

Distribution:
   Original to Hearing Officer
   Copy to Facility
   Copy to Patient Advocate/Attorney

| Tape # | Start | End |
|---|---|---|
| 3182 | 359 | 540 |
| 5157 | 0 | 425 |

SDSC MHC-48(Rev 4-03)   **CERTIFICATION REVIEW HEARING FINDINGS AND ORDER**