1

2

3

4

5

6

7

8 # UNITED STATES DISTRICT COURT

9 # SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11 DANIEL T. BRUMFIELD, M.D., and DAINA RYCKMAN, | CASE NO. 08 CV 0958 WQH (NLS) |
| 12 Plaintiffs, | **ORDER** |
| 13 vs. | |
| 14 SDPD OFFICER MUNOZ, SDPD OFFICER DAWSON, SDPD OFFICER PIERCE, SDPD OFFICER BOLLIG, AMERICO A. ALBALA, M.D., MICHAEL E. MCMANUS, M.D., | |
| 15 | |
| 16 Defendants. | |
| 17 | |

18 HAYES, Judge:

19      The matter before the Court is the Motion to Dismiss the fifth claim for relief filed by

20 Defendants Americo A. Albala, M.D. and Michael E. McManus, M.D.  (Doc. # 4).

21 ## BACKGROUND

22      On May 30, 2008 Plaintiff Daniel T. Brumfield, M.D. ("Dr. Brumfield"), and

23 Plaintiff Daina Ryckman ("Ms. Ryckman") filed the Complaint against San Diego Police

24 Department ("SDPD") Officer Munoz, SDPD Officer Dawson, SDPD Officer Pierce,

25 SDPD Officer Bollig, Americo A. Albala, M.D. ("Dr. Albala"), and Michael E. McManus,

26 M.D. ("Dr. McManus").  The Complaint alleges the following claims for relief: (1)

27 Unreasonable (Warrantless) Seizure in violation of 42 U.S.C. § 1983, as to Officer Munoz,

28 Officer Dawson, and Officer Pierce, by Plaintiff Brumfield; (2) Unreasonable Seizure:

Excessive Force in violation of 42 U.S.C. § 1983, as to Officer Munoz, Officer Dawson, and Officer Pierce, by Plaintiff Brumfield; (3) Unreasonable (Warrantless) Seizure in violation of 42 U.S.C. § 1983, as to Officer Pierce and Officer Bollig, by Plaintiff Ryckman; (4) Unreasonable Seizure: Excessive Force in violation of 42 U.S.C. § 1983, as to Officer Pierce and Officer Bollig, by Plaintiff Ryckman; and (5) Professional Negligence: Medical Malpractice, as to Defendants McManus and Albala, by Plaintiff Brumfield.

On June 30, 2008, Officer Munoz, Officer Dawson, Officer Pierce, and Officer Bollig filed an answer to the Complaint.  (Doc. # 5).  On June 30, 2008, Dr. McManus and Dr. Albala filed the Motion to Dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dr. McManus and Dr. Albala move to dismiss the Complaint's fifth claim for relief, the only claim for relief directed at them.  On August 11, 2008, Plaintiff Brumfield filed an Opposition to the Motion to Dismiss. (Doc. # 8).  On August 15, 2008, Dr. McManus and Dr. Albala filed the Reply to the Opposition to the Motion to Dismiss. (Doc. # 11).

### ALLEGATIONS OF THE COMPLAINT

Dr. Brumfield is a "well known" and "well respected" psychiatrist who retired 10 years ago after approximately 40 years of practice.  *Complaint*, ¶ 11.  Dr. Brumfield and his wife, Deanne ("Mrs. Brumfield"), live on an 8 acre ranch located east of Highway 5 and South of Route 56 in San Diego, California.  *Id.*  The area where Dr. Brumfield and Mrs. Brumfield live is sparsely populated,  home to several large ranches, and frequented by large populations of laborers and transient workers, many whom are undocumented aliens. *Id.* Ms. Ryckman is the adult daughter of Dr. Brumfield.  *Id.*, ¶ 4.

On or about May 28, 2007 between 2:30 and 3:00 a.m., Dr. Brumfield suffered a hypnogogic episode and awoke believing an intruder was in his home.  Mrs. Brumfield called the police for help.  The police arrived, investigated the situation, and left without taking action.  The police were informed at this time that Dr. Brumfield and Mrs. Brumfield had a firearm in their home for protection. *Id.*, ¶ 14.

On or about May 28, 2007 at approximately 3:00 p.m., while Mrs. Brumfield was running errands, Dr. Brumfield was exposed to a significant quantity of insect fogger, needed medical assistance, and dialed 911 for help. *Id.*, ¶ 15. Mrs. Brumfield arrived home while her husband was on the phone with the 911 dispatcher. Mrs. Brumfield took the phone from Dr. Brumfield and related to the 911 dispatcher that Dr. Brumfield believed an intruder was in the home. *Id.*, ¶ 16. Mrs. Brumfield informed the 911 dispatcher that the Brumfields' had a firearm in the home. *Id.*, ¶ 17. The 911 dispatcher told Mrs. Brumfield not go back inside and to wait outside for the police to arrive. *Id.*

The police arrived at the Brumfields' home with six squad cars and a canine unit. In addition, a police helicopter hovered over the Brumfields' home. *Id.*, ¶ 19. The police ordered Dr. Brumfield to come out of his home. *Id.* When Dr. Brumfield walked outside of his home without a gun, Officer Munoz, Officer Dawson, and Officer Pierce swarmed him, applied excessive force, and tore his rotator cuff. *Id.* Ms. Ryckman, was curious about the police presence and walked with her dog to the Brumfields' home. Ms. Ryckman was unable to hear the explanations of the officers to restrain her dog. After Ms. Ryckman told the officers to be careful with her father, she was arrested for violating Penal Code § 148. Ms. Ryckman was not booked or charged for violating Penal Code § 148. *Id.*, ¶ 20.

The officers acted under the authority of Welfare and Institutions Code § 5150 and took Dr. Brumfield to County Mental Health. *Id.*, ¶ 21. Dr. Brumfield was deemed unsuitable for treatment at County Mental Health, and was transported to Aurora Behavioral Health ("ABH"). *Id.*, ¶ 22. At ABH, Dr. Brumfield was placed in the care of Dr. McManus. *Id.*, ¶ 23. Dr. McManus's medical report stated that Dr. Brumfield had (1) barricaded Mrs. Brumfield in the house; (2) discharged 3 cherry bombs in the house; and (3) discharged a firearm in the house. *Id.* This information is not in the police report. *Id.*

On May 31, 2008, after the initial 72 hour hold had expired, Dr. McManus authorized Dr. Brumfield to be held for an additional 14 days. *Id.*, ¶ 24. Dr. McManus certified to the Superior Court that Dr. Brumfield was a danger to others, and was gravely disabled as defined by Welfare and Institutions Code § 5008. *Id.* After he was certified as

08 CV 0958 WQH (NLS)

1   a danger to others and gravely disabled, Dr. Brumfield was delivered to the care of Dr.

2   Albala.  *Id.*, ¶ 26.  Dr. Albala held Dr. Brumfield until June 7, 2008, and released him prior

3   to the expiration of the 14 day hold.  *Id.*, ¶ 27.  Dr. Albala diagnosed Dr. Brumfield with

4   "Dementia with Delusions Features of Unknown Etiology."  *Id.*  Dr. Albala prescribed the

5   anti psychotic medication, Resperdol, to Dr. Brumfield.  *Id.*, ¶ 28.  Dr. Brumfield could not

6   properly take Resperdol because he previously suffered a heart attack. *Id.*  Dr. Albala did

7   not disclose the risks associated with Resperdol to Mrs. Brumfield, whom Dr. Albala relied

8   on to administer the medications.  *Id.*

9        Dr. Stephen F. Signer evaluated Dr. Brumfield subsequent to his release and

10   determined that (1) Dr. Brumfield was not suffering from a mental illness, and (2) there

11   was no medical reason he could not possess a firearm.  *Id.*, ¶ 29.

12                          **STANDARD OF REVIEW**

13        A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure

14   tests the legal sufficiency of the claim stated in the complaint.  The complaint will not be

15   dismissed if the factual allegations in the complaint are enough to raise the right to the

16   relief above a speculative level.  *Bell Atlantic v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

17   While the complaint does not need to possess detailed factual allegations, "a plaintiff's

18   obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels

19   and conclusions, and a formulaic recitation of the elements of a cause of action will not

20   do."  *Id*.  The Court will construe the complaint in the light most favorable to the

21   nonmoving party and accept well-plead factual allegations as true.  *Cahill v. Liberty Mut.*

22   *Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  The Court will dismiss the complaint if the

23   plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

24   *Id.* at 338.

25                          **CONTENTIONS OF PARTIES**

26        Defendants McManus and Albala, contend that they are immune from civil liability

27   for medical malpractice under California Welfare & Institutions Code section 5154 and

28   section 5278.  Defendants contend that a psychiatric patient cannot bring a medical

malpractice action against a psychiatric provider when the patient was detained for
treatment pursuant to California Welfare & Institutions Code section 5150.

Plaintiff Brumfield contends that California Welfare & Institutions Code sections
5154 and 5278 do not immunize a health care provider from liability for breach of the
applicable standard of care during the period of confinement.  Plaintiff contends that
immunity does not extend to Dr. Albala's decision to prescribe Resperdol.

## DISCUSSION

"The Lanterman-Petris-Short Act ("LPS Act") governs the involuntary treatment of
the mentally ill in California."  *Jacobs v. Grossmont Hospital*, 108 Cal.App.4th 69, 74
(2003).  Under its provisions, an individual may be brought to an appropriate facility for a
72 hour treatment and evaluation if there is "probable cause to believe that the person is, as
a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled."
Cal. Welf. & Inst. Code § 5150.  A person admitted to a facility for a 72 hour treatment and
evaluation receives an evaluation after they are admitted and receives whatever treatment
or care his or her condition requires.  Cal. Welf. & Inst. Code § 5152.  A person admitted to
a facility for a 72 hour treatment and evaluation may be certified for further detention for
not more than 14 days if the, "professional staff of the agency or facility providing
evaluation services ... has found the person ... a danger to others, or to himself or herself, or
gravely disabled."  Cal. Welf. & Inst. Code § 5250(a).

Individuals authorized to detain a person for a 72 hour treatment and evaluation are
provided immunity for civil and criminal liability when exercising this authority in
accordance with the law.  Cal. Welf. & Inst. Code § 5278.   The section 5278 immunity
"applies to individuals or entities who make the decision to detain, when that decision is
supported by probable cause."  *Jacobs*, 108 Cal.App.4th at 76.  Section 5278 does not
confer absolute immunity from liability on individuals authorized to detain, treat, and
evaluate a person under the provisions of the LPS Act.  *Id.* at 78.  Absolute immunity from
liability under section 5278 would undermine the intent of the LPS Act, and would expose
the mentally disordered "to the possibility of grossly negligent or intentional mistreatment,

1    with no legal recourse." *Id.* at 78.   The section 5278 immunity does not extend to

2    "negligent acts, intentional torts, or criminal wrongs committed during the course of the

3    detention, evaluation, or treatment," or to injuries proximately caused by negligence. *See,*

4    *e.g. Jacobs*, 108 Cal.App.4th at 78 (section 5278 immunity does not extend to defendant

5    hospital where plaintiff wearing a rubber slipper tripped and sustained injury while walking

6    down the hospital corridor with a nurse during a 72 hour hold)**.**

7         In *Heater v. Southwood Psychiatric Center*, 42 Cal.App.4th 1068 (1996), plaintiff

8    Heater was placed on a 72-hour hold pursuant to section 5150.  *Id.* at 1075.  After his

9    release, Heater sued the hospital for false imprisonment, assault and battery, and medical

10   malpractice.  Heater's medical malpractice claim was based solely on the fact that he was

11   detained involuntarily and treated without his consent.  The appellate court affirmed the

12   judgment of the trial court finding that the section 5278 immunity extended to Heater's

13   medical malpractice claim.  The court explained that "civil liability ... for medical

14   malpractice is precluded insofar as the detention is 'in accordance with the law.'"  *Heater*,

15   42 Cal.App.4th at 1083.   "[S]ection 5278 immunity extends to claims based on facts that

16   are inherent in an involuntary detention that is undertaken pursuant to section 5150."

17   *Jacobs*, 108 Cal.App.4th at 78-79.

18        The Complaint in this case alleges that Plaintiff Brumfield was admitted to the care

19   of Dr. McManus and Dr. Albala pursuant to section 5150.  The Complaint alleges that Dr.

20   McManus and Dr. Albala "failed to adequately diagnose and treat [Plaintiff] Brumfield

21   resulting in his unlawful and unjustified (continued) imprisonment in a mental health

22   facility."  *Complaint*, ¶ 58.  The Complaint alleges that Dr. McManus failed to properly

23   investigate the facts which led to Plaintiff Brumfield's commitment; that Dr. McManus's

24   certification to the Superior Court that Plaintiff Brumfield was a danger to others was based

25   on "unjustified conclusions lacking in factual and legal support"; that the failure of Dr.

26   Albala to properly examine, treat and investigate the facts led to Plaintiff Brumfield's

27   continued commitment; and that Dr. Albala's prescription of Resperdol could not safely be

28   taken because Plaintiff Brumfield previously suffered a heart attack.  Viewing the

allegations in the Complaint in the light most favorable to the Plaintiff, the Court concludes that the fifth claim for relief is based solely upon alleged facts that are inherent in an involuntary detention.   "[S]ection 5278 immunity extends to claims based on facts that are inherent in an involuntary detention that is undertaken pursuant to section 5150." *Jacobs*, 108 Cal.App.4th at 78-79.   Plaintiff has not alleged facts that would support a conclusion that Dr. McManus and Dr. Albala acted outside the scope of immunity extended by section 5278.

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion to Dismiss the fifth and only claim for relief against Defendants McManus and Albala (Doc. # 4) is GRANTED.  Defendants McManus and Albala are dismissed from this action without prejudice.

DATED:  October 23, 2008

**WILLIAM Q. HAYES**
United States District Judge